735 So.2d 98 (1999)
STATE of Louisiana
v.
Barry PASCUAL, Jr.
No. 98-KA-1052.
Court of Appeal of Louisiana, Fifth Circuit.
March 30, 1999.
*99 Laurie A. White, New Orleans, for Appellant Barry Pascual, Jr.
Paul D. Connick, Jr., District Attorney, Parish of Jefferson, Terry M. Boudreaux, Ellen S. FantaciAttorney of Record on Appeal (Research & Appeals), Quentin P. KellyTrial Attorney, James F. Scott Trial Attorney, Assistant District Attorneys, Gretna, for Appellee State of Louisiana.
Panel composed of Judges CHARLES GRISBAUM, Jr., JAMES L. CANNELLA and SUSAN M. CHEHARDY.
CANNELLA, J.
Defendant, Barry Pascual, appeals from his conviction of first degree murder and sentence to life imprisonment at hard labor, *100 without benefit of parole, probation or suspension of sentence. For the reasons which follow, we affirm and remand.
On February 5, 1996, Jefferson Parish deputies were called to investigate the shooting death of Brett L. Squatrito. According to the victim's friend, Michael Mitchell (Mitchell), on the day of the shooting, he and the victim were riding with the victim driving, in the victim's Ford Mustang. They drove onto Vintage Street, in Jefferson Parish and encountered two males riding in a Chevrolet Camaro. The victim commenced following the Camaro. Mitchell stated that he did not know why the victim was following the Camaro, except that the victim liked to race other cars. Mitchell also stated that he did not know either the driver or the passenger of the Camaro. As the Camaro turned onto Rice Place, it stopped. The victim stopped his car behind the Camaro. Mitchell then saw what he believed to be a gun pointing out of the passenger side window. He noted it to the victim who immediately shifted his car into reverse and drove in reverse down Rice Place, turning onto Ole Miss Street, still in reverse. He backed down Rice Place to Mitchell's house and attempted to pull into the yard in front of the house. The Camaro followed the victim's car, at some point turning around so that the front of the Camaro faced the front of the victim's car. As the victim attempted to pull into the yard, Mitchell stated that he heard shots and glass breaking. He grabbed his head and ducked down. He asked the victim if he was hit. The victim did not answer, but grabbed himself and exited the vehicle, running toward the house. The victim collapsed at the doorway to the house. The white Camaro fled the scene.
The occupants of the Camaro, defendant and Derrick Sonnier (Sonnier), proceeded to Sonnier's aunt's house. Sonnier told his aunt that he and the defendant had been involved in a shooting earlier that evening on York Street, but did not tell her of the shooting on Ole Miss Drive. They left the gun with Sonnier's aunt. She later disposed of it in Bayou St. John. However, the following day, upon learning of Sonnier's involvement in the murder, she contacted the authorities and told them what had happened and where the gun was located.
Defendant and Sonnier were arrested the day after the shooting, on February 6, 1996. Both gave voluntary statements to the police, each implicating the other as the shooter in the Ole Miss Street incident, although Sonnier admitted to being the shooter in the York Street shooting.
On March 28, 1996, the Jefferson Parish Grand Jury indicted the defendant, Barry Pascual, and co-defendant, Derrick Sonnier, for the first degree murder of Brett L. Squatrito, in violation of La. R.S. 14:30. On April 16, 1996, the defendant was arraigned and pled not guilty. In response to a bill of particulars filed by the defendant's attorney, the State specified that it was prosecuting the defendant pursuant to La. R.S. 14:30(A)(1) (drive-by shooting) and (3) (more than one person).
On June 11, 1997, the trial judge granted an oral motion, by the defense, to sever the defendants for trial. On November 7, 1997, the State amended the indictment as to Sonnier, to second degree murder. On November 18-20, 1997, Sonnier was tried and convicted of second degree murder. Thereafter, defendant's counsel filed a motion attempting to prevent the State from trying defendant on the charge of first degree murder and exposing him to the possibility of the death penalty, based on the argument that the State was advocating conflicting theories of the case as to which person was the actual shooter. The trial court denied the defense motion. On December 1-3, 1997, the defendant was tried on the charge of first degree murder by a twelve person jury. The jury unanimously found the defendant guilty as charged. Written polling was conducted. Following the penalty phase of the defendant's trial, which was held on December 4, 1997, the jury was unable to agree upon *101 whether or not the defendant should receive the death penalty. The trial judge ordered that the record reflect a hung jury.
On December 19, 1997, the trial judge sentenced the defendant to serve life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. The defendant filed an appeal on December 23, 1997, which the trial judge granted on January 5, 1998.
On appeal, defendant assigns three errors and requests review of the record for any errors patent on the face of the record.

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error the defendant argues that the trial court erred in denying his motion for new trial based on the argument that the verdict was contrary to the law and evidence. The thrust of defendant's argument on this assignment of error is that the evidence was insufficient to support the verdict.
In reviewing claims challenging the sufficiency of the evidence the appellate court must consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Hawkins, 96-766 (La.1/14/97), 688 So.2d 473.
In this case, the defendant was convicted of first degree murder; the killing of a human being when the offender has the specific intent to kill or to inflict great bodily harm and is engaged in a drive-by shooting or has the specific intent to kill or inflict great bodily harm on more than one person. La. R.S. 14:30(A)(1) & (3). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent need not be proven as a fact but may be inferred from the circumstances and actions of the accused. State v. Graham, 420 So.2d 1126 (La.1982). It is the role of the fact finder to determine the weight of the evidence and the jury may accept or reject, in whole or in part, the testimony of any witness. The appellate courts may not second guess the jury's rational credibility determinations. State v. Bordenave, 95-2328 (La. 4/26/96), 678 So.2d 19.
Defendant's primary contention on appeal is that the testimony at trial of the sole witness to the shooting, Mitchell, who identifies the defendant as the shooter, contradicted the statements which he made to the police on the night of the shooting. Therefore, defendant argues that the evidence fails to conclusively establish that he shot the victim.
The State proved that the fatal shot occurred during a drive-by shooting and that more than one person was in the car that was fired upon. The evidence presented at trial, including defendant's own admission, also clearly established that defendant was the passenger in the vehicle from which the shots were fired. The sufficiency of the evidence establishing these facts is not contested on appeal.
Rather, the sole issue raised on appeal regarding the sufficiency of the evidence is whether the State proved that defendant was the person who fired the gun that killed the victim.
Defendant argues that the evidence establishing him as the shooter was insufficient. In support of his argument, he cites the following evidence. The sole witness to the shooting, Mitchell, told the detective on the night of the shooting that the passenger had a mustache and that the driver was clean shaven. There was evidence offered establishing that the driver of the Camaro, Sonnier, had a mustache on the day after the shooting. Mitchell could not pick defendant out of a photographic lineup. In the shooting incident that occurred three hours earlier that night on York *102 Street, the evidence indicated that Sonnier was the owner and driver of the Camaro, the defendant was the passenger and Sonnier did the shooting. The murder weapon belonged to Sonnier and bullets matching those used in the murder were found in Sonnier's bedroom.
The State cites the following evidence in support of its argument that the evidence was sufficient to support the verdict. Mitchell testified that he did not know either of the occupants of the Camaro prior to the shooting. Shortly after the shooting, Mitchell told the detectives that the passenger in the Camaro fired the shots. Defendant admitted in a statement that he was the passenger in the Camaro. Although Mitchell did not select defendant out of a photographic line-up, he did select Sonnier out of the line-up and identified him as the driver of the vehicle from which the shots were fired. Mitchell testified that the shots came from the passenger side of the vehicle. Mitchell also identified defendant in court as the passenger in the vehicle and the person who fired the shots.
The reliability of Mitchell's identification of defendant as the passenger and shooter were established by the evidence presented. The incident occurred at about 7:30 p.m. in a residential area with street lighting. Mitchell testified that when the Camaro first stopped on Rice Street, the defendant was physically close enough to speak to Mitchell and Mitchell saw the defendant at that time. Mitchell saw a gun in the passenger's hand on Rice Street. Mitchell also viewed the occupants of the Camaro following the shooting. Mitchell gave descriptions of the Camaro's occupants to the detectives called to the scene. Shortly thereafter, Mitchell selected Sonnier out of a photographic line-up and identified him as the driver of the Camaro.
Other circumstantial evidence corroborated Mitchell's testimony that defendant, the passenger in the Camaro, fired the shots that killed the victim, the driver of the Mustang. Defendant, in his statement to police, described the Mustang as facing the wrong way on Ole Miss Drive, a oneway street, and the Camaro as facing the right way. In other words, the front of the Camaro was facing the front of the Mustang. That placed the passenger of the Camaro directly across from the victim, the driver of the Mustang. The autopsy photograph shows that the bullet entered the left side of the victim's body.
Therefore, we find that, viewing the evidence in the light most favorable to the prosecution it was sufficient for the jury to conclude beyond a reasonable doubt that the bullet that killed the victim was fired by the defendant. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER TWO
By this assignment of error the defendant argues that he was denied due process of law because of two rulings by the trial judge concerning the defendant's allegations that the State was advocating inconsistent theories of the case to obtain convictions of both Sonnier, the co-perpetrator, and himself. More particularly, defendant contends that in the Sonnier trial, which was concluded by a guilty verdict of the charge of second degree murder, the State put forth the theory that it was uncertain whether Sonnier or defendant had actually shot the gun that killed the victim. However, in the instant case, by charging the defendant with first degree murder and seeking the death penalty, the State was espousing the theory that the defendant was the one who fired the weapon. The defense filed two motions concerning the alleged inconsistent theories put forth by the State. One was a motion to have the charge against defendant reduced from first degree murder (and exposure to the death penalty), to second degree murder, with which Sonnier had been charged and convicted. The other motion was to obtain a ruling that would permit the defense to tell the jury, during the penalty phase of the trial, that the State in an earlier trial had expressed uncertainty *103 as to who was the actual shooter. Both motions were denied by the trial court. It is the denial of those motions that forms the basis of defendant's complaint in this assignment of error.
At the outset of our discussion, we feel constrained to point out that there are no allegations herein, even if proven, that would require reversal of defendant's conviction in this case. As stated in the discussion of assignment of error number one, the evidence presented at trial was sufficient to support the conviction for first degree murder. Therefore, we find no trial error with the State's decision to go forward with a charge against this defendant for first degree murder. Further, regarding the evidence presented during the penalty phase, we point out that since the jury did not recommend the death penalty, any adverse rulings regarding the admissibility of evidence during that phase of the trial, are moot. Defendant neither assigns nor argues any errors on this issue that might have tainted the jury verdict rendered against him.[1]
Moreover, the defense argument concerning inconsistent theories by the State in the two cases relates solely to argument by the district attorney in the Sonnier case. The defense makes no argument that the State presented inconsistent evidence or testimony in the two cases, which would, of course, be unacceptable. It is well settled that where the alleged inconsistent theories espoused by the State does not amount to more than the emphasis which the prosecutor places on the facts relating to culpability of the particular defendant on trial, the trial court does not err in refusing to allow the defense to present the prosecutor's remarks in the prior trial to the jury in the second trial. State v. Lavalais, 95-0320 (La.11/25/96), 685 So.2d 1048, cert. denied, ___ U.S. ___, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997); State v. Wingo, 457 So.2d 1159 (La.1984), cert denied, 471 U.S. 1030, 105 S.Ct. 2049, 85 L.Ed.2d 322 (1985).
Here, defendant argues that the prosecutor in the Sonnier trial advocated an inconsistent theory to this case when he presented argument to the effect that it was not certain who pulled the trigger. Here, he argued that defendant pulled the trigger. However, additional evidence was presented in this case when Mitchell took the stand and expressly identified the defendant in court as the person who shot the gun. Therefore, we find that, as in Wingo and Lavalais, the alleged inconsistent theories of the cases amounts to nothing more than the State's emphasis on the evidence presented at trial as to the culpability of the particular defendant being tried. As such, we find that the argument by counsel in the Sonnier case, emphasizing the culpability of Sonnier based on the evidence presented during that trial, although somewhat inconsistent with the State's position in this case, was not admissible.
Under La.C.Cr.P. art. 61, the district attorney, subject to the supervision of the attorney general, "has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute."
Therefore, we find no error in the rulings by the trial court refusing to order the State to reduce the charges against the defendant to second degree murder and not allowing the defense to inform the jury of the argument made by the prosecutor in the Sonnier trial.
This assignment of error has no merit.

*104 ASSIGNMENT OF ERROR NUMBER THREE
By this assignment of error defendant argues that the trial court erred in refusing to grant his motion for a mistrial because the district attorney made improper remarks in his rebuttal argument. More particularly, during rebuttal argument, the district attorney said, in response to the defense argument that the State had presented a weak case:
And he says it's a weak case, It's one of the strongest cases I ever had.
Defense counsel objected to the remark and moved for a mistrial. The trial court denied the motion for a mistrial, but immediately admonished the jury as follows:
Okay, ladies and gentlemen. Disregard that last remark. You are to decide the case obviously from the facts whatever facts you find from the evidence presented to you in this case.
Defense counsel noted his objection and argues on appeal that the trial court erred in not granting the motion for mistrial.
The scope of rebuttal argument is to be confined to the evidence admitted and to answering the argument of defendant. La.C.Cr.P. art. 774. The State concedes that the comments in question were outside of the evidence presented at trial. However, the State argues that the admonishment by the trial court was sufficient and that mistrial was not warranted.
La.C.Cr.P. art. 771, applicable to the improper argument in this case, provides in pertinent part:
In the following cases, upon the request of the defendant or the State, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the State in the mind of the jury:
* * * * * *
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant of a fair trial.
Whether a mistrial should be granted is within the sound discretion of the trial court and denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. State v. Brown 96-1310 (La.App. 5th Cir. 4/9/97), 694 So.2d 435, writs denied, 97-1251 (La.10/31/97), 703 So.2d 19.
Moreover, in a similar case, State v. Barrow, 410 So.2d 1070 (La.1982), cert. denied, 459 U.S. 852, 103 S.Ct. 115, 74 L.Ed.2d 101 (1982), the Supreme Court found that a reference to personal experience by the district attorney goes beyond the proper scope of argument, but, before a case is reversed on the grounds of improper argument, the trial court must be convinced that the remarks influenced the jury and contributed to the verdict. See also, State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364, cert. denied, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996), reh'g denied, 519 U.S. 1023, 117 S.Ct. 546, 136 L.Ed.2d 429 (1996), affirming the Barrow standard.
Upon reviewing the comments made by the prosecutor and the evidence as a whole, we find no error in the trial court denial of the mistrial. Following the remark, the trial court sustained the defense objection and admonished the jury to disregard the remark and to confine their decision to the facts and evidence presented. We do not find that the district attorney's statement, followed by the admonishment, influenced the jury and contributed to the verdict. The admonishment was sufficient to assure the defendant a fair trial. There was no need for a mistrial. This assignment of error has no merit.

PATENT ERROR
The defendant requests that the entire record be reviewed for errors patent pursuant to La.C.Cr.P. art. 920. Defendant *105 points out, in that regard, that the trial court failed to inform the defendant at the time of sentencing of the prescriptive period for post conviction relief, as prescribed by La.C.Cr.P. art. 930.8. Defendant also notes that defendant was not given credit for time served.
After reviewing the record for errors patent we find no other errors than those pointed out by defense counsel and conceded by the State. However neither present reversible error.
The lack of proper advice regarding the prescriptive period for applying for post conviction relief can be corrected on remand. The trial court is instructed to send the appropriate written notice to defendant of the correct statement of the law regarding the prescriptive period for post conviction relief and to file written proof in the record that defendant received the notice. See, State v. Kershaw, 94-141 (La. App. 5th Cir.9/14/94), 643 So.2d 1289.
Failure of the trial court to give credit for time served requires no corrective measures. La.C.Cr.P. art. 880, as amended by Act 788 of 1997, effective August 15, 1997, makes credit for time served self-operating even on a silent record. State v. McCorkle, 97-966, (La.App. 5th Cir.2/25/98), 708 So.2d 1212. Therefore, although the trial judge did not state that the defendant was given credit for time served, credit will be given pursuant to La.C.Cr.P. art. 880 as amended.
Accordingly, for the reasons stated above, defendant's conviction for first degree murder and his sentence to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence are affirmed. The case is remanded to the trial court to provide proof in the record of defendant's receipt of appropriate notice under La.C.Cr.P. art. 930.8 of the prescriptive period for post conviction relief.
CONVICTION AND SENTENCE AFFIRMED; CASE REMANDED.
NOTES
[1] It must be emphasized that the defense does not argue that they were not permitted to ask any witness about inconsistent testimony. Nor does the defense raise an issue regarding any ruling of that nature that occurred during trial. The sole focus of this assignment of error concerns the trial court's refusal to order a reduction in the charge against the defendant and a ruling that the district attorney's argument in the Sonnier trial could not be presented to the jury in the penalty phase of this case.