836 So.2d 614 (2002)
STATE of Louisiana,
v.
Joe W. MILLER.
No. 02-KA-729.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 2002.
*615 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, Rick Pickens, Doug Freese, Assistant District Attorneys, Gretna, for State of Louisiana, Plaintiff/Appellee.
Jane L. Beebe, Louisiana Appellate Project, Gretna, for Joe W. Miller, Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD And WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
Defendant, Joe Miller, was charged in a bill of information on August 28, 2001 with aggravated flight from a police officer in violation of LSA-R.S. 14:108.1 and possession of a stolen thing, a 1985 Pontiac Grand Prix, valued in excess of $500 in violation of LSA-R.S. 14:69. He pled not guilty and filed several pre-trial motions including a motion to suppress confession, identification and physical evidence. The record does not indicate that defendant's pre-trial motions were ever ruled upon. Defendant proceeded to trial on October 16, 2001 without any objection regarding the lack of rulings on his pre-trial motions.[1] A twelve-person jury unanimously found defendant guilty as charged on both counts.
Thereafter, the State filed a multiple offender bill of information alleging defendant to be a second felony offender based on his current conviction for possession of a stolen thing and a 1998 conviction for theft of goods. Defendant stipulated to the allegations contained in the multiple bill and was sentenced as a multiple offender to 20 years on count two. The court also sentenced defendant to two years on count one, aggravated flight from a police officer, and ordered the two sentences to run concurrently.
Defendant appeals his conviction for possession of a stolen thing and his sentence on the basis of two assignments of error. Defendant also requests a review of the record for errors patent.

FACTS
At approximately 3:20 a.m. on July 31, 2001, Trooper Robert Harris was conducting stationary radar on the elevated portion of the Westbank Expressway near the Harvey Canal when he observed a vehicle westbound in the center lane being driven without its headlights and without a license plate. Trooper Harris activated his lights and siren and attempted to stop the vehicle. He signaled the driver of the vehicle, later identified as defendant, to pull over.
Defendant continued past the Barataria exit, put on his hazard lights and then exited at Ames. Through his loudspeaker, Trooper Harris instructed defendant to turn into the McDonald's parking lot at the corner of Ames and the Westbank Expressway. However, defendant ran the red light at Ames, turned onto Ames, crossed into opposing traffic and increased *616 his speed. He pulled into the Villa De Ames apartment complex, bailed out of the car and started running. The car, which was still running, left the roadway and ran into the apartment building.
Trooper Harris and Trooper Joseph Piglia, who had arrived to assist Trooper Harris, chased after defendant on foot. During the foot pursuit, defendant discarded his shirt and baseball cap. Defendant was apprehended one to two minutes later wearing a white T-shirt and blue jeans.
Trooper Piglia went to turn off the car, which was still running, and discovered the car had no keys and a defeated steering column. The car, a 1985 Pontiac Grand Prix, belonged to Patricia Nunnery and had been stolen from the front of Ms. Nunnery's cousin's house where it had been parked for several months. Ms. Nunnery made an insurance claim for the damages to her car and received $2,100 as a result of the claim.

DISCUSSION
By his first assignment of error, defendant argues the evidence was insufficient to establish that he was the perpetrator of the crime. He asserts that he is a victim of misidentification by the police. He contends there were many people in the apartment complex that evening during the chase and the police caught the wrong man.
The standard of review for the sufficiency of evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In addition to proving the statutory elements of the charged offense at trial, the State is required to prove the identity of the perpetrator. State v. Vasquez, 98-898 (La.App. 5 Cir. 2/10/99), 729 So.2d 65, 69. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. Id.
Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt. A reviewing court is required to consider the whole record, and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. The actual trier of fact is presumed to have acted rationally until it appears otherwise. State v. Mussall, 523 So.2d 1305, 1310 (La.1988).
The entire incident was recorded on Trooper Harris' video equipment, which automatically records when the unit's lights are activated. Defendant argues the videotape is of such poor quality the thief's identity cannot be established. However, during his testimony, Trooper Harris identified defendant as the person he saw driving the car. He stated he never lost sight of defendant during the entire chase and was never more than five to six feet behind the defendant. He testified that, after defendant was apprehended, defendant initially identified himself as "Joe Williams" as opposed to his real name "Joe Miller." Trooper Harris stated there was no doubt in his mind that defendant was the person he chased and who was driving the car.
Additionally, Trooper Piglia identified defendant as the person he and Trooper Harris were chasing. He explained he was approximately two seconds behind Trooper Harris during the chase. Trooper Piglia testified he maintained view of the fleeing suspect and had no doubt that defendant was the person driving the vehicle.
*617 Defendant contends there was a discrepancy between the shoes and socks of the perpetrator in the video and the clothing in evidence. However, Trooper Piglia stated the clothes in evidence were the same clothes defendant was wearing the night of the arrest.
It is the fact finder's function to determine the weight of the evidence bearing on the defendant's identification. It is not the appellate court's function to reevaluate the credibility choices made by the fact finder. State v. Spencer, 93-571 (La.App. 5 Cir. 1/25/94), 631 So.2d 1363, 1370, writ denied, 94-488 (La.2/3/95), 649 So.2d 400.
In State v. Bridgewater, 01-507 (La.App. 5 Cir. 10/17/01), 800 So.2d 964, defendant also argued that she was a victim of misidentification by the police. She alleged her companion was the one who attempted to steal the store's merchandise. She claimed that because she and her companion were similar in appearance, the police officer mistakenly identified her as the one who took the merchandise. The police officer testified that he never lost sight of the defendant from the time he saw her take the clothing items off the rack until he apprehended her in the store's parking lot and that he was certain it was defendant, and not her companion, who discarded the merchandise. This Court noted that the jury's verdict was based on a credibility determination and concluded there was sufficient evidence of defendant's identity as the perpetrator of the crime.
In the present case, both Trooper Harris and Piglia testified that defendant was the person they saw driving the stolen car. The jury was shown the videotape and had the opportunity to compare the contents of the videotape to the testimony of the troopers. The jury obviously believed the troopers' testimony that defendant was the perpetrator. Viewing the evidence in a light most favorable to the prosecution, it appears there was sufficient evidence for a rational trier of fact to conclude beyond a reasonable doubt that defendant committed the offense.
This assignment of error is without merit.
Defendant next argues that his sentence is excessive. Defendant received a 20-year enhanced sentence, the maximum allowed by law. He asserts he does not deserve the maximum sentence considering his minimal criminal history for non-violent crime. Defendant maintains he is not the worst offender for which the maximum sentence is reserved and points out that no one was injured or threatened by his conduct. He also contends the trial court failed to mention LSA-C.Cr.P. art. 894.1 when sentencing him. The State alleges defendant received his enhanced sentence in conformity with a plea agreement and, therefore, cannot seek review of the sentence.
Defendant admitted the allegations in the multiple bill and was found to be a second felony offender. Prior to the plea colloquy on the multiple bill, the following exchange occurred:
Prosecutor: I'm going to file a multiple bill of information alleging Mr. Miller to be a double offender. I believe we've reached an agreement that he agrees to plead guilty to the multiple bill and twenty years.
Defense Counsel: That's correct, Your Honor. Emma Vaughn representing Joe Miller in this matter, Your Honor. And he does stipulate to the double bill.
The trial court then conducted a plea colloquy advising defendant of his right to a hearing, right to confront his accusers and right against self-incrimination. There was no discussion regarding the terms of *618 the plea agreement during the plea colloquy and there is no written waiver of rights form in the record setting forth the terms of the plea agreement.
Under LSA-C.Cr.P. art. 881.2A(2), a "defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea." The record demonstrates there was a plea agreement where defendant agreed to stipulate to the multiple bill and receive 20 years. Defendant received a 20-year sentence in conformity with the plea agreement and, therefore, is precluded from seeking appellate review of his sentence.[2]See, State v. Francis, 98-811 (La.App. 5 Cir. 1/26/99), 727 So.2d 1235, 1240, writ denied, 99-0671 (La.6/25/99), 746 So.2d 597.
Appellant requests, pursuant to La. C.Cr.P. art. 920, a review of the record for errors patent: any error discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.
As requested by defendant, the record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990). The following matter was discovered:
While the minute entry shows that defendant was advised of the prescriptive period for post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8, the transcript does not. Where there is a discrepancy between the transcript and the minute entry, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La. 1983). Thus, the trial court is hereby instructed to inform defendant of the two-year prescriptive period by sending written notice to defendant within ten days after the rendition of the appellate opinion and to file written proof in the record that defendant received such notice. State v. Cordero, 99-44 (La.App. 5 Cir. 6/1/99), 738 So.2d 84, 93, writs denied, 99-1877, 750 So.2d 981 and 99-1878 (La.11/24/99), 750 So.2d 981.

CONCLUSION
Accordingly, for the reasons assigned herein, the conviction and sentence of defendant, Joe Miller, are hereby affirmed. Further, the case is remanded to the trial court with instructions for the court to notify defendant and correctly inform him of the prescriptive period for seeking post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8 and to file written proof in the record that defendant received such notice.
CONVICTION AND SENTENCE AFFIRMED; CASE REMANDED WITH INSTRUCTIONS.
NOTES
[1] Motions pending at the commencement of trial are waived when the defendant proceeds to trial without raising as an issue the fact that the motions were not ruled upon. State v. Jackson, 99-401 (La.App. 5 Cir. 10/13/00), 746 So.2d 698, 703.
[2] It is specifically noted that defendant only challenges the excessiveness of his sentence and does not challenge the validity of his guilty plea on the basis he did not knowingly and intelligently plead guilty.